**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 20 1995

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

EUGENE HUNT, et al.                                    PLAINTIFF

VS                              NO. PB-C-89-406

STATE OF ARKANSAS, et al.                              DEFENDANT

CURTIS LEE                                            INTERVENOR

## MOTION TO VACATE CONSENT DECREE

COMES NOW the Intervenor, and for his motion, states:

1.

Intervenor's challenge arises under the Fifth, Fourteenth and Fifteenth Amendments of the Constitution of the United States, and pursuant to 42 U.S.C. §§ 1983, 1988.

## JURISDICTION AND VENUE

2.

Subject matter jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331, 1343(3), (4).

3.

Venue is proper in this Court under 28 U.S.C. §§1391(b)(1), (2).

8 5

## PARTIES

4.

Intervenor Curtis Lee is a resident of Dermott, Chicot County, Arkansas, and is a registered voter of the Tenth Judicial District. Pursuant to the current redistricting plan, Intervenor Lee resides in special sub-district Division One with a black voting age population of 58%. Intervenor is adversely affected by the racial gerrymandering which is the subject of this intervention.

## FACTUAL BACKGROUND

5.

Plaintiffs filed this action alleging that the current system of at-large elections for judicial candidates in each of Arkansas's judicial districts was in violation of the Voting Rights Act, 42 U.S.C. § 1973, as amended, and that the at-large voting system was in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution. Generally, the plaintiffs complain that at-large voting works to deny black voters equal opportunity to participate in the political process.

6.

According to a consent decree between the parties and filed of record on November 7, 1991, and as amended, defendants admitted liability under the Voting Rights Act, and, as a result, Judicial Districts One, Two, Six, Ten and Eleven West were modified as follows:

> **Judicial District One**, two sub-districts will be created: one comprising a total population of 60,414 persons, with a white voting age population of 60,414 persons with a white voting age population (WRAP) of 33,604 persons, or 78,14 percent, for the election of one circuit judgeship (Division Two) and one chancery judgeship (Division One); and one comprising a total population of 49,978 persons, with an African American voting age population (BVAP) of 19,781 persons, or 62.00 percent, for

the election of one circuit judgeship (Division One) and one chancery judgeship (Division Two). The existing juvenile judgeship will be elected at-large.

**Judicial District Two**, two sub-districts will be created: one comprising a total population of 211,064 persons, with a WRAP of 143,849 persons, or 92.48 percent, for the election of two circuit judgeships (currently held by C. David Burnett and Gerald Pearson) ;and one comprising a total population of 39,931 persons, with a BVAP of 15,551 persons, or 60.47 percent, for the election of one circuit judgeship (currently held by Olan Parker, Jr.). All other existing judgeships will be elected at-large.

**Judicial District Six**, two sub-districts will be created: one comprising a total population of 258,313 persons, with a WRAP of 175,093 persons, or 90.00 percent, for the election of five circuit judgeships, (Divisions Two, Three, Four, Six, and Seven), five chancery judgeships (Divisions Two, Three, Four, Five, and Six), and one circuit/chancery juvenile judgeship (Chancery Division Seven) ; and one comprising a total population of 99,316 persons, with a BVAP of 41,939 persons, or 60.38 percent, for the election of two circuit judgeships (Division One), one circuit/chancery juvenile judgeship (Chancery Division Eight), and the circuit/chancery judgeship that has been recommended by the Arkansas Judicial Council, Inc., when it is created by the Arkansas General Assembly. The existing circuit/chancery mental health judge will be elected at-large.

**Judicial District Ten** , two sub-districts will be created: one comprising a total population of 48,399 persons, with a WVAP of 30,342 persons, or 85.13 percent, for the election of one circuit judgeship (Division Two); and one comprising a total population of 37,973 persons, with a BVAP of 14,681 persons, of 58.00 percent, for the election of one circuit judge (Division One). All other existing judgeships will be elected at-large.

**Judicial District 11W**, two sub-districts will be created: one comprising a total population of 49,519 persons, with a WVAP of  29,557 persons, or 82.39 percent, for the election of one circuit judgeship (Division Two) and one chancery judgeship (Division One); and one comprising a total population of 49,658, with a BVAP of 21,726 persons, or 60.41 percent, for the election of one circuit judgeship (Division One) and one chancery judgeship (Division Two). The existing circuit/chancery juvenile and circuit/chancery judgeships will be elected in the District at-large. If and when an additional judgeship is recommended by the Arkansas Judicial Council,

3

Inc., and created by the Arkansas General Assembly in Judicial
District 11W, it will be assigned to the majority African
American sub-district.

7.

The above judicial districts were reformed only with race considered.  The
consent decree corroborates the "race only" factor as is expressly stated throughout the decree,
and no other reason or factor is mentioned.

8.

The parties entered into what can only be characterized as an extreme
expression of racial gerrymandering and, in order to implement the plan and establish the race
requirements for each district and sub-district, the same were reduced to grotesque
representations of a political ideal designed to link communities that are predominantly black.
Long corridors and irrational boundaries were created to corral voters into their respective
segregated district or sub-district based solely on the color of their skin or race.  Neither
Section 2 nor Section 5 of the Voting Rights Act requires that geographically dispersed black
voters be lumped together to maximize the efficacy of their vote.  Apparently, the parties
herein have used the Voting Rights Act as a tool to forcibly implement their own redistricting
policies rather than apply the Act according to its own terms.

## COUNT I

### VIOLATION OF INTERVENOR'S EQUAL
### PROTECTION RIGHTS ACTIONABLE UNDER 42 U.S.C. § 1983

9.

Intervenor incorporates by reference Paragraphs 1 through 8 of this motion and
proposed claim as if fully set forth herein.

10.

C:\WPDOCS\CLEE\VACATE.MOT                                     4

It is well settled that the right to vote is a fundamental right guaranteed to
United States citizens.  The Fourteenth Amendment to the United States Constitution, Section
1, provides:

> No state shall make or enforce any law which shall abridge the
> privileges or immunities of citizens of the United States; nor
> shall any state deprive any person of life, liberty, or property,
> without due process of law; nor deny to any person within its
> jurisdiction the equal protection of the laws.

11.

Under the Fourteenth Amendment and its progeny of cases thereunder, *Shaw v.
Reno*, 509 U. S. ___, 113 S.Ct. 2816, 125 L.Ed.2d 511, 1993 U.S. Lexis 4406 (1993), and
*Johnson v. Miller*, 1995 U. S. Lexis 4462 (opinion delivered June 29, 1995), it is unlawful for
a state to categorize citizens on the basis of race absent a compelling state interest.
Furthermore, the equal protection clause of the Fourteenth Amendment requires that state
action that segregates citizens according to race be narrowly tailored to further such
compelling state interest.

12.

The consent decree is race-biased on its face.  The redistricting plan
implemented thereunder is specifically designed to, and does in fact classify citizens on the
basis of race, and is not even colorably dependant on other factors but race.

13.

The configuration of the affected judicial districts as they now exist are bazaar
by design intentionally caused by the parties to create a super-majority of black voting-age
citizens in each district.  The configuration of each sub-district violates the equal protection
rights of both black and white voters to participate in an electoral process not premised on the
intentional  segregation of voters on the basis of race.

14.

The consent decree and its subsequent implementation is not supported by any compelling governmental interest.  Consequently, the redistricting plan is not narrowly tailored to further any compelling state interest.

15.

Intervenor is entitled to the declaratory and injunctive relief as referenced in Paragraph 18 of this motion to remedy the equal protection violations embodied in the consent decree.

## COUNT II

### VIOLATION OF INTERVENOR'S FIFTEENTH AMENDMENT RIGHTS ACTIONABLE UNDER 42 U.S.C. § 1983

16.

Intervenor incorporates by reference Paragraphs 1 through 15 of this motion as if fully set forth herein.

17.

The Fifteenth Amendment to the United States Constitution, Section 1,

provides:

> The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition of servitude.

18.

The redistricting plan as set forth in the consent decree and as subsequently implemented abridges the right of Intervenor and others to vote for  various district judges with district-wide authority.  Consequently, Intervenor's rights under the Fifteenth Amendment to the United States Constitution have been violated and denied.

WHEREFORE, premises considered, Intervenor prays:

1.      That the Court vacate the consent decree, as amended, and all relief granted therein.

2.      That the Court declare the redistricting plan as per the consent decree to be unconstitutional and of no further force and effect insofar as it purports to establish special sub-districts within Judicial Districts One, Two, Six, Ten, and Eleven West.

3.      That the Court return the districts to their boundaries and composition as they were immediately prior to the consent decree.

4.      That the Court permanently enjoin the parties from conducting elections within the districts under the redistricting plan until the districts have been restored to their lawful and constitutional form.

5.      That the Court award costs and attorney's fees to Intervenor pursuant to 28 U.S.C. §§ 1988, 1983, or as otherwise authorized by law; and that the Court grant Intervenor such additional further relief as the Court deems just and proper.

6.      That the Court declare Section 2 or Section 5 of the Voting Rights Act unconstitutional should it be determined that Section 2 or Section 5 of the Act requires electoral districts to be drawn according to race.

CURTIS LEE, Intervenor

CHARLES. S. GIBSON, #70027
C. S. "CHUCK" GIBSON, II, #90030
**GIBSON LAW OFFICE**
107 North Freeman Street
Drawer 510
Dermott, Arkansas 71638-0510
Telephone: (501) 538-3288
Facsimile: (501) 538-5029

and

JOHN RICHARD BYRD, SR.
Attorney at Law
Post Office Drawer 270
Hamburg, Arkansas 71646-0270
Telephone No.: (501) 583-8225
Facsimile No. (501) 853-8226

BY: _____
     C. S. "CHUCK" GIBSON, II, #90030

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been delivered by United States Mail, first class delivery, to the following this the 20th day of July, 1995:

Dayna L. Cunningham, Esq.
NAACP Legal Defense Fund, Inc.
99 Hudson Street
16th Floor
New York, NY 10013

P. A. Hollingsworth, Esq.
Hollingsworth Law Firm, P.A.
Main Place Building
415 Main Street
Little Rock, AR 72201-3801

Julius L. Chambers, Esq.
NAACP Legal Defense Fund, Inc.
99 Hudson Street
16th Floor
New York, NY 10013

Roy C. Lewellen, Esq.
Attorney at Law
14 West Main
Gerrard Building
Marianna, AR 72360-2247

Arkie Byrd, Esq.
Mays & Crutcher
415 Main Street
Little Rock, AR 72201-3801

Lisa A. Kelly, Esq.
Hunt & Kelly
219 West 5th Avenue
Pine Bluff, AR 71601-4129

Jack A. McNulty, Esq.
Attorney at Law
P. O. Box 7808
Pine Bluff, AR 71611

C. S. "CHUCK" GIBSON, II

C:\WPDOCS\CLEE\VACATE.MOT        9